Michael L. GURLEY;  David W.
Davis;  Appellants,

v.

DOCUMATION   INCORPORATED;   S.
Ray Halbert;  Richard J. Testa;  Testa,
Hurwitz and Thibeault;  Appellees.

Michael L. GURLEY,  David W.
Davis, Appellees,

v.

DOCUMATION INCORPORATED;  S.
Ray Halbert, Defendants,

and

Richard J. Testa,  Testa,  Hurwitz and
Thibeault, Appellants.

Michael L. GURLEY;  David W.
Davis;  Appellees,

v.

DOCUMATION INCORPORATED;  S.
Ray Halbert;  Appellants,

and

Richard J. Testa;  Testa, Hurwitz and
Thibeault;  Defendants.

Nos. 81–1684 to 81–1686.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 3, 1982.

Decided March 22, 1982.

254

Ansley J. Robin, Alexandria, Va. (Philip F. Hudock, Hudock & Robin, P. C., McLean, Va., on brief), for appellants.

James L. Sanderlin, Richmond, Va. (Warren E. Zirkle, Beverly C. Powell, John G. Douglass, McGuire, Woods & Battle, David Machanic, Pierson, Ball & Dowd, Benjamin F. P. Ivins, Washington, D. C., on brief), for appellees.

Before WINTER, Chief Judge, WIDENER and MURNAGHAN, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

Plaintiffs, Michael L. Gurley and David W. Davis, sued Documation, Inc., S. Ray Halbert, Richard J. Testa, and the law firm of Testa, Hurwitz, and Thibeault, for securities fraud in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), as implemented by Rule 10b-5, 17 C.F.R. § 240.10b–5. To this federal cause of action, plaintiffs appended state causes of action for common law fraud and breach of corporate fiduciary duties. The district court dismissed the § 10(b) count under Rule 12(b)(6), F.R.Civ.P., for failure to state a claim upon which relief might be granted. Having disposed of the sole federal claim, the district court declined to exercise pendent jurisdiction over the state-law causes of action.

The district court also ruled that the statute of limitations provided by Virginia's blue sky law, Va.Code Ann. § 13.1–522(d) (Repl. Vol. 1977) applied to plaintiff's § 10(b) claim. However, it concluded that the record was not yet sufficiently developed to permit a determination of whether the limitations period expired prior to the bringing of this suit. The district court therefore declined to employ the statute of limitations as an alternative ground for dismissal.

Plaintiffs contest the district court's ruling that they failed to state a federal claim. They also insist that the applicable statute of limitations was Va.Code Ann. § 8.01–243, subd. B (Repl. Vol. 1977), which provides a five-year limitations period, instead of the blue sky law, id. § 13.1–522(d), which prescribes a two-year period. Defendants cross-appeal on the question whether plaintiffs' § 10(b) claim is time barred. We agree with plaintiffs that they stated a cause of action in part. We hold that the two-year period is the proper limitations to apply. We are also in agreement with the district court that the question of whether the action is time barred cannot yet be decided. Thus we affirm in part and reverse in part, remanding for further proceedings.

## I.

We begin by reviewing the allegations of plaintiffs' complaint, which in the present posture of the case must be taken as true.

Plaintiffs are former shareholders of Documation, Inc. (Documation), a Delaware corporation doing business in Virginia. Defendant Halbert is chairman, president, and chief executive officer of Documation as well as a major shareholder in that company. Defendants Richard J. Testa and the law firm of Testa, Hurwitz, and Thibeault served as general counsel to Documation at all times material to this case.

Documation was incorporated in March 1970, and Halbert was one of two original shareholders. Plaintiffs became shareholders within a month of the incorporation. To persuade plaintiffs to buy Documation stock, Halbert promised them that they would be permitted to sell their shares in conjunction with any future public offering by the company.

Plaintiffs made it clear that they desired to sell their stock and to "piggyback" on any registered public offering the company might undertake. At a shareholders' meeting on April 7, 1976, Halbert and Testa told plaintiffs that a public offering was contemplated for some indefinite future date. Halbert and Testa also informed plaintiffs that, as individual shareholders, they would not be permitted to piggyback on the offering.

Defendants did not disclose that preparations were already underway for the offering, which was to be made at the earliest possible date. Nor did they reveal that Halbert and other shareholders would be piggybacking. Furthermore, they informed plaintiffs that Securities and Exchange Commission Rule 144, 17 C.F.R. § 230.144, would bar them from selling their unregistered shares for ninety days after the commencement of a registered public offering. In fact, however, defendants were aware that Rule 144 did not apply to plaintiffs' shares, which were issued before the rule took effect, and that plaintiffs were entitled to sell their holdings under other SEC rules. The purpose of these misrepresenta-

tions and omissions was to keep plaintiffs' stock off the market temporarily and thereby to support the price of Documation's publicly issued shares.

Between April 8 and April 14, 1976, plaintiff Gurley sold 3,900 shares of Documation stock to an employee of the company for $6.50 per share. Gurley made this sale in reliance on Documation's deliberate misrepresentations and omissions.

On June 4, 1976, Documation filed with the S.E.C. a registration statement that became effective on June 8, 1976. A total of 474,000 registered shares were sold to the public, consisting of 300,000 new shares by Documation, 100,000 by Halbert, and 34,000 by other piggybacking shareholders. Each share brought a price of $17.00. Immediately after the public offering, the price of Documation stock began to fall.

At the time of the public offering, plaintiff Gurley owned 19,900 shares of Documation stock, and plaintiff Davis owned 46,900 shares. During the ensuing ninety days, both contacted stockbrokers in an effort to sell their shares. These attempts were unavailing, however, because defendants, purporting to abide by Rule 144, refused to transfer plaintiffs' shares until ninety days after the public offering. After ninety days elapsed, plaintiffs began to dispose of their stock. Sold over an extended period of time, their stock brought prices ranging from $7.00 per share to $10.54 per share.

## II.

The district court held that *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), bars plaintiffs' claim under § 10(b) of the 1934 Act. In *Blue Chip*, the Supreme Court endorsed the so-called *Birnbaum* rule under which a person who is neither a purchaser nor a seller of securities may not sue under § 10(b). *See Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2 Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952).

■ Plaintiffs in *Blue Chip* claimed they were fraudulently induced not to *purchase* certain securities. The Supreme Court,

however, left little doubt that it approved the *Birnbaum* rule not only as regards non-purchasers, but also as regards those who allege that they were fraudulently induced not to *sell* securities. 421 U.S. at 737–38, 95 S.Ct. at 1926–27. Courts had previously applied *Birnbaum* to foreclose such "retention" claims, *see, e.g., Ingenito v. Bermec Corp.*, 376 F.Supp. 1154, 1174–76 (S.D.N.Y. 1974), and they have uniformly adhered to that interpretation in the wake of *Blue Chip, see Sacks v. Reynolds Securities, Inc.*, 593 F.2d 1234, 1239–41 (D.C.Cir.1978); *Williams v. Sinclair*, 529 F.2d 1383, 1389 (9 Cir. 1976), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976); *Clinton Hudson & Sons v. Lehigh Valley Cooperative Farms*, 73 F.R.D. 420, 425–26 (E.D.Pa.1977), *aff'd mem.*, 586 F.2d 834 (3 Cir. 1978).

To determine the proper application of *Blue Chip* here, it is necessary to separate out the various strands of plaintiffs' § 10(b) theory. Their first claim is that they were wrongfully and fraudulently prevented from piggybacking on Documation's public offering. Their second contention is that defendants' deceptive and manipulative conduct prevented them from selling their shares for ninety days after the public offering. Finally, plaintiff Gurley maintains that he sold 3,900 shares prior to the public offering, and that he did so in reliance on defendants' intentional misrepresentations.

■ The implications of *Blue Chip* are clear with respect to the first and last of plaintiffs' claims. Their allegation that they were prevented from piggybacking on the public offering involves no sale of securities. Under a straight-forward application of *Blue Chip*, that allegation is not actionable. *See Blue Chip*, 421 U.S. at 737–38, 95 S.Ct. at 1926–27; *Sacks*, 593 F.2d at 1239–41; *Williams*, 529 F.2d at 1389; *Haynes v. Anderson & Strudwick, Inc.*, 508 F.Supp. 1303, 1317–18 (E.D.Va.1981). Just as plainly, however, Gurley satisfies the

*Blue Chip* purchaser-or-seller requirement with respect to the 3,900 shares he sold before the public offering in reliance on defendants' alleged deliberate misrepresentations. Hence, *Blue Chip* furnishes no ground for dismissing the complaint as to those particular sales.[1]

There remains to be determined whether plaintiffs pled a good cause of action in alleging that they were prevented from selling their shares until ninety days after the public offering. The district court treated this claim as indistinguishable from a claim of fraudulently induced failure to sell, and hence as barred by *Blue Chip*. Plaintiffs contend that they meet the purchaser-or-seller test of *Blue Chip*, since they eventually sold their shares. Because they are sellers of securities in the literal sense, plaintiffs maintain that they are entitled to relief if they can show that the alleged frauds were "in connection with" their sales, as required by § 10(b) of the 1934 Act and by Rule 10b–5.

Plaintiffs rely on *Travis v. Anthes Imperial Ltd.*, 473 F.2d 515 (8 Cir. 1973), and *Stockwell v. Reynolds & Co.*, 252 F.Supp. 215 (S.D.N.Y.1965). These cases, which antedate *Blue Chip*, permit § 10(b) actions for fraudulently induced delay in the sale of securities on the theory that the 1934 Act is to be liberally construed for the protection of investors.[2] *See Travis*, 473 F.2d at 522; *Stockwell*, 252 F.Supp. at 219. *See generally Bolger v. Laventhol, Krekstein, Horwath & Horwath*, 381 F.Supp. 260, 266 (S.D.N.Y. 1974) (explaining and distinguishing *Stockwell* and *Travis*); *In re Penn Central Securities Litigation*, 62 F.R.D. 181, 186 (E.D.Pa. 1974) (same). More recently, the Sixth Circuit has held that a deferred sale is actionable under § 10(b) if the sale took place sufficiently soon after the alleged fraud to support an inference that the seller acted in reliance on the fraud. *Marsh v. Armada Corp.*, 533 F.2d 978, 981–82 (6 Cir. 1976),

---

1. Contrary to defendants' suggestion, we think that the allegations regarding Gurley's April 1976 sale were well pleaded in the amended complaint and therefore were sufficiently brought to the attention of the district court.

2. The *Travis* court also relied on an alternative holding that plaintiffs satisfied the *Birnbaum* rule by operation of the "forced seller" doctrine. 423 F.2d at 522.

*cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977).

Defendants argue with considerable force that *Stockwell, Travis*, and *Marsh* are inconsistent with *Blue Chip*. Indeed, at least two post-*Blue Chip* cases have disallowed deferred sale claims under § 10(b). *See O'Brien v. Continental Illinois Mutual Bank & Trust*, 593 F.2d 54, 58 (7 Cir. 1979); *Ohashi v. Verit Industries*, 536 F.2d 849, 852–53 (9 Cir.), *cert. denied*, 429 U.S. 1004, 97 S.Ct. 538, 40 L.Ed.2d 616 (1976). Analysis of the policies underlying the *Blue Chip* decision persuades us that one who claims that he was fraudulently induced to delay a sale of securities must, like a nonseller, be denied standing under § 10(b).

The Supreme Court's central concern in *Blue Chip* was to reduce the incidence of nuisance suits under § 10(b). The pendency of a securities fraud case can seriously disrupt a defendant's normal business activities unrelated to the suit. Absent the *Birnbaum* rule, moreover, such cases would be highly resistant to disposition by pretrial motion because they usually turn on conflicting oral testimony as to critical elements of the plaintiff's claim. These factors, coupled with the magnitude of potential liability under § 10(b), exert heavy pressure on defendants to settle even frivolous cases, and can be expected to attract numerous plaintiffs willing to exploit meritless claims for their settlement value. *See* 421 U.S. at 739–44, 95 S.Ct. at 1927–29. In short, litigation under § 10(b) poses "a danger of vexatiousness different in degree and in kind from that which accompanies litigation in general." *Id.* at 739, 95 S.Ct. at 1927. Since private rights of action under § 10(b) arise by implication rather than by express congressional directive, judicial resort to a restrictive rule of standing is appropriate to guard against abuse of the litigation process. *See id.* at 748–49, 95 S.Ct. at 1931–32.

■ Of course, a literal application of *Blue Chip* does not foreclose a claim that the defendant's fraud caused the plaintiff to sell his shares later than he would otherwise have done. But such deferred sales claims pose the same risk of abuse as the pure retention claims which are barred by *Blue Chip* and *Birnbaum*. A deferred seller's allegations, like those of a nonseller, are likely to rest in large part on his own oral testimony. The timing and volume of sales he would have undertaken but for the alleged fraud are almost inevitably matters of speculation. The ease with which parties can manufacture deferred sales claims with sufficient plausibility to survive summary proceedings raises a high risk of the kind of spurious litigation which the *Blue Chip* court sought to weed out. Furthermore, *Blue Chip* would be completely undercut if an investor disgruntled by the market performance of his stock could create § 10(b) standing by making a sale and alleging prior fraud. *See O'Brien*, 593 F.2d at 58; *cf. Blue Chip*, 421 U.S. at 747, 95 S.Ct. at 1931 ("In the absence of the Birnbaum doctrine, bystanders to the securities marketing process could await developments on the sidelines without risk, claiming that inaccuracies in disclosure caused nonselling in a falling market . . . .").

We recognize that barring deferred sales claims under § 10(b) will penalize some deserving plaintiffs. The *Blue Chip* court likewise took account of that disadvantage but concluded that it is outweighed by the benefits of a prophylactic rule. *See* 421 U.S. at 738–39, 95 S.Ct. at 1926–27. Due regard for the policies expounded in *Blue Chip* compels us to strike the same balance here. We therefore hold that a plaintiff who claims he was fraudulently caused to delay the sale of securities lacks standing to sue under § 10(b) of the 1934 Act.

### III.

Since we hold that plaintiff Gurley's stock sales in April 1976 give him standing to litigate § 10(b) claims with respect to these sales, we must address the other issues raised on appeal—namely, which statute of limitations applies, and whether it is apparent on the record that the statute has run.

■ Where, as under § 10(b), a federal cause of action has no express limitations

period, the action is subject to the state statute of limitations "which most clearly addresses the same or similar policy considerations as are addressed by the federal right being asserted." *O'Hara v. Kovens,* 625 F.2d 15, 18 (4 Cir. 1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981). *See Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946). On this principle, we have subjected private actions under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), to the limitations period prescribed by Virginia's blue sky law. *Newman v. Prior,* 518 F.2d 97, 99–100 (4 Cir. 1975). Similarly, we have held that the statute of limitations provided by Maryland's blue sky law applies to private actions under § 10(b). *O'Hara,* 625 F.2d at 18.

■ *Newman* and *O'Hara* lend obvious support to the district court's holding that the limitations period of Virginia's blue sky law, Va.Code Ann. § 13.1–522(d) (Repl. Vol. 1977) applies to the § 10(b) claims in this case. Plaintiffs contend, however, that the appropriate statute of limitations is Va. Code Ann. § 8.01 243 subd. B (Repl. Vol. 1977). Section 8.01 243 addresses all actions for which no other limitations period is otherwise provided—a designation which encompasses common law fraud.[3]

In *Newman* and *Prior,* we declined to apply such catchall statutes of limitations to federal securities claims. Plaintiffs nevertheless insist that Virginia's blue sky law is inapposite because it prohibits only fraud against buyers of securities, not fraud against sellers such as is alleged here.[4] In *O'Hara* we rejected a similar argument partly on the ground that the Maryland blue sky law made the defrauding of sellers a criminal offense, although it created no private remedy for such conduct. *See* 625 F.2d at 17 18. Noting that Virginia's blue sky law accords neither public nor private remedies for frauds against sellers, plaintiffs contend that the reasoning of *O'Hara* precludes the application of Virginia's blue sky law in this case.

**3.** The statute provides:

> *Personal action for injury to person or property generally.—*
> . . . .
> B. Every action for injury to property, including actions by a parent or guardian of an infant against a tort-feasor for expenses of curing or attempting to cure such infant from the result of a personal injury or loss of services of such infant, shall be brought within five years next after the cause of action shall have accrued.

Va.Code Ann. § 8.01–243 subd. B (Repl. Vol. 1977). The precursor to this statute which was in effect at the time of the frauds alleged in this case provided:

> Every personal action, for which no limitation is otherwise prescribed shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die it can be brought by or against his representative; and, if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued.

Va.Code Ann. § 8–24 (Cum.Supp.1976) (repealed 1977). Were this statute still in force, we might have a nice question as to whether plaintiffs' action is such as would survive the death of a party and thus entitles them to the five-year, rather than the one-year, limitations period. *See generally, Newman,* 518 F.2d at 99.

**4.** The blue sky law provides, *inter alia* :

> (a) Any person who: . . . (2) Sells a security by means of an untrue statement of a material fact or any omission to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they [sic] were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,
> Shall be liable to the person purchasing such security from him who may sue either at law or in equity to recover the consideration paid for such security, together with interest thereon at the rate of six percent per annum, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of such security, or for the substantial equivalent in damages if he no longer owns the security.
> . . . .
> (d) No suit shall be maintained to enforce any liability created under this section unless brought within two years after the transaction upon which it is based . . . .

Va.Code Ann. § 13.1-522(a)(2), (d) (Repl. Vol. 1977).

Plaintiffs take too narrow a view of the controlling analysis. In *O'Hara* we emphasized the critical policy link between the federal right being asserted and the applicable state statute of limitations:

It is not necessary that the state statute operate in the same fashion as the federal scheme, nor is it necessary that the state statute describe a cause of action identical to the federal cause at issue. There simply must be a commonality of purpose between the federal right and the state statutory scheme so that it is reasonable to subject the federal implied right to the statute of limitations provided by state law.

*Id.* at 18 (citations omitted). Virginia's blue sky law shares with § 10(b) of the 1934 Act the central purpose of protecting investors from fraud in the securities markets. "By comparison, the shared purposes between § 10(b) and common law fraud are generalized at best." *O'Hara*, 625 F.2d at 18. *See generally Morris v. Stifel, Nicolaus & Co.*, 600 F.2d 139 (8 Cir. 1979); *Parrent v. Midwest Rug Mills, Inc.*, 455 F.2d 123, 125–28 (7 Cir. 1972).

We think the fact that both § 10(b) and the blue sky law address the problem of misinformation in securities transactions is far more significant, for present purposes, than the fact that the blue sky law does not specifically speak to frauds against sellers. *Accord, Roberts v. Magnetic Metals Co.*, 611 F.2d 450, 462–63 (3 Cir. 1979) (Seitz, C. J., dissenting); *Dupuy v. Dupuy*, 551 F.2d 1005, 1023 n.31 (5 Cir.), *cert. denied*, 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977); *see also Fox v. Kane-Miller Corp.*, 542 F.2d 915 (4 Cir. 1976). *Contra, Roberts v. Magnetic Metals Co.*, 611 F.2d at 454–55 (plurality opinion); *id.* at 459–60 (concurring opinion). Because the blue sky law is the Virginia statute which most clearly addresses the policy concerns of § 10(b) of the

1934 Act, we hold that the two-year limitations period of the blue sky law applies to private actions under § 10(b).[5]

■ Like the district court, however, we conclude that it would be premature to dismiss otherwise proper claims in this lawsuit on the basis of the statute of limitations. We cannot at this early juncture exclude the possibility that plaintiff Gurley will be able to show that he could not reasonably have been expected to discover the alleged fraud earlier than he did. *See Johns Hopkins University v. Hutton*, 422 F.2d 1124, 1131 (4 Cir. 1970) (the question of plaintiff's diligence in uncovering fraud is for the jury where the facts give rise to conflicting inferences). Accordingly, we remand this case to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

5. That the express limitations periods of the federal securities acts are generally short indicates a federal policy of repose that militates against applying the long limitations period for common law fraud to implied private causes of action under § 10(b). *See Newman*, 518 F.2d at 100 n.4. We recognize that it is in some sense anomalous that plaintiffs' state claims may be brought within five years while, under our decision in this case, federal claims arising from the same facts must be brought within two years. It would be a much greater anomaly, however, if sellers were accorded five years to sue under § 10(b), while buyers must, under *Newman*, sue within two years.