A. Bruce **UMSTEAD**, Margaret W. Umstead and Willie Lea Farthing, Plaintiffs,

v.

**DURHAM HOSIERY MILLS, INC.**, and George A. Cralle, H.E. Schoenhut, Jr., John P. Barnett, and Frederick L. Russell, Individually, Defendants.

No. C–83–1168–D.

United States District Court, M.D. North Carolina, Durham Division.

Jan. 26, 1984.

William Woodward Webb of Broughton, Wilkins & Webb, Raleigh, N.C., Kevin P. Roddy, Charlottesville, Va., for plaintiffs.

L. Bruce McDaniel of DeBank, McDaniel; Heidgerd & Holbrook, Raleigh, N.C., G. Eugene Boyce of Boyce, Mitchell, Burns & Smith, Raleigh, N.C., for defendants.

## MEMORANDUM OPINION AND ORDER

HIRAM H. WARD, Chief Judge.

Before the Court is defendants' pre-Answer Motion to Dismiss the Complaint (October 31, 1983) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(1), (6). (November 22, 1983). Defendants have requested a hearing, but .the Court finds that a hearing would not aid resolution of this matter. The Court will deny the Motion, but will require plaintiff to file a more definite statement in accordance with Fed.R.Civ.P. 12(e).

For purposes of this Motion, the allegations of the Complaint are accepted as true. *Adams v. Bain,* 697 F.2d 1213, 1216 (4th Cir.1982). Plaintiffs are minority shareholders of Durham Hosiery Mills, Inc. (Durham Hosiery). On January 15, 1981, a majority of the voting shares approved a plan of reorganization or merger of the existing Durham Hosiery, a North Carolina corporation, into DHM, Inc., a new Virginia corporation with its principal place of business in Danville, Virginia. Prior to the merger, defendants Cralle and Schoenhut were directors and officers of Durham Hosiery. Defendant Barnett desired to invest in Durham Hosiery if he could obtain a controlling corporate interest and defendant Russell, Barnett's attorney, formulated a stock purchase plan which would enable Barnett to control the merger vote. During the fall of 1980, Barnett acquired 38,-966 (54.8%) of the corporation's outstanding shares. Cralle purchased 28,188 shares

from brokers in New York and New Jersey for Barnett and also bought a number of shares directly from shareholders without disclosing that he was acting on Barnett's behalf. Barnett purchased the remainder of his shares from Cralle and Schoenhut at inflated prices. Materials concerning the proposed merger were mailed to the shareholders on December 22, 1980. Plaintiffs contend that the materials misrepresented the market price of the stock and the statutory rights of dissenting shareholders and omitted material facts concerning the corporate financial condition and the above described relationship among Barnett, Cralle, and Schoenhut. Plaintiffs voted against the merger, and their subsequent demands to be paid their stocks' fair value were denied.

Defendants first argue that the Court lacks subject matter jurisdiction over plaintiffs' claims because any rights plaintiffs have as dissenting shareholders to the fair value of their stock is governed solely by North Carolina or Virginia state law. Defendants assert that Virginia law controls, and plaintiffs' failure to appropriately pursue their appraisal remedy under Va.Code § 13.1–75 precludes the instant action.

Plaintiffs advise the Court that the Durham Hosiery merger has been the subject of several other judicial proceedings in various state and federal courts. Portions of those actions are instructive here. Defendants have made similar arguments in these cases but their position on which state appraisal remedy applies has vacillated.[1] The Court finds that N.C.Gen.Stat. § 55–113 grants plaintiffs an appraisal remedy and that this remedy is not exclu-

sive. Section 55–113 applies to shareholders of both successor and predecessor corporations in a merger, and it expressly states that a shareholder may seek payment under the statute "[i]n addition to any other right he may have in law or equity." N.C.Gen.Stat. § 55–113(a)(2), (b). Plaintiffs here are merely pursuing other rights.

The four count Complaint alleges (1) a breach of fiduciary duty, (2) a violation of Rule 10b–5, (3) common law fraud, and (4) racketeering.[2] Corporate directors, officers and majority shareholders owe fiduciary duties to minority shareholders. *Meiselman v. Meiselman*, 58 N.C.App. 758, 295 S.E.2d 249 (1982); N.C.Gen.Stat. § 55–35. Defendants contend no breach of any fiduciary duty occurred and, not surprisingly, their version of the merger is quite different from plaintiffs'. However, plaintiffs' allegation, taken as true, that defendants intended to freeze out the minority shareholders adequately states a breach of fiduciary duty claim.

Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated under the authority of section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j, provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to

---

1. In *Lindner v. Durham Hosiery Mills, Inc.*, No. 81–0004(c) (W.D.Va. January 27, 1981), the court noted in dismissing the action that North Carolina law provided minority shareholders with an appraisal remedy. Plaintiffs state that defendants relied on this holding in persuading a Virginia state court to dismiss a similar action filed by Robert White. Lindner and White filed actions in the Eastern District of North Carolina where the court deemed defendants' argument that Virginia law apply barred by judicial estoppel. *Lindner v. Durham Hosiery Mills, Inc.*, No. 81–1087–CIV–5; *White v. Durham Hosiery Mills, Inc.*, No. 81–912–CIV–5 (E.D.N.C. January 25,

1983); *see Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir.1982) (judicial estoppel is involved to prevent a party from "playing fast and loose" with the courts by adopting a legal position in conflict with one taken in related litigation). Defendants have not discussed these related actions.

2. Although not so pled, the state law claims rest on pendent jurisdiction because there is not complete diversity between plaintiffs and defendants.

make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

The four elements in a Rule 10b–5 action are (1) conduct by defendant which is prohibited by the Rule, (2) purchase or sale of security by plaintiff in connection with defendant's conduct, (3) damages, and (4) scienter. *Gilbert v. Bagley*, 492 F.Supp. 714, 727 (M.D.N.C.1980).

 Plaintiffs' allegations that the notices and information generated by defendants and sent to them as shareholders omitted certain financial information which would establish the true financial condition of Durham Hosiery and materially misrepresented the terms and circumstances of recent "market transactions" which affected the value of the corporate stock are sufficient. Whether the plaintiffs sold or purchased stock in connection with such prohibited conduct is not so easily decided. In *Blue Chips Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Supreme Court reaffirmed the rule that a private damages suit under Rule 10b–5 is confined to actual purchasers or sellers of securities, a rule first established in *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). There are, however, exceptions to this rule and plaintiffs contend that they are excepted as "constructive sellers" under the "forced seller doctrine." A shareholder should be treated as a seller when the nature of his investment has been fundamentally changed from an interest in an ongoing enterprise to a right solely to payment of money for his shares. *Vine v. Beneficial Finance Co.*, 374 F.2d 627 (2d Cir.), *cert. denied*, 389 U.S. 970, 88

S.Ct. 463, 19 L.Ed.2d 460 (1967) (sufficient number of corporate stocks acquired by one party permitted a short-form merger without approval of class of shareholders of which plaintiff was a member). When a shareholder has in substance become a seller despite the fact that he still holds stock certificates in a non-functioning corporation, the purchase/sale element of Rule 10b–5 is not a bar to recovery. *Coffee v. Permian Corp.*, 434 F.2d 383, 386 (5th Cir.1970).

 While the instant case is factually distinguishable from *Vine* in that the Durham Hosiery merger was not a short-form merger but was approved by a majority of the shareholders, the facts of this case warrant finding plaintiffs were effectively Rule 10b–5 purchasers. In *S.E.C. v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), shareholders who voted in favor of a merger and obtained stock in the new corporation were deemed to have "purchased" stock in the new company by exchanging it for their old stock. Plaintiffs are not "deferred sellers" who have no standing under Rule 10b–5. *See Gurley v. Documation Inc.*, 674 F.2d 253 (4th Cir.1982) (deferred seller claim barred because of the high risk of manufactured, nuisance suits). Rather, by voting against the merger, plaintiffs effectively purchased stock in the new Durham Hosiery. Their failure to allege that they sold or exchanged their shares is inconsequential since the merger was consummated. *Marsh v. Armada Corp.*, 533 F.2d 978 (6th Cir.1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977). The merger itself effected an exchange which satisfies the purchase or sale requirement, and the allegations that plaintiffs have been denied the fair value of their shares as a result of the defendants' willful and fraudulent behavior are adequate to withstand the motion to dismiss.[3]

---

**3.** Plaintiff advises without objection by defendants, that the Court in *White v. Durham Hosiery*, No. 81–912–CIV–5 (E.D.N.C. January 25, 1983), reached an identical result on this point, and a

jury subsequently found the defendants (except for defendant Russell who was not therein a named defendant) committed common law fraud and violated Rule 10b–5.

 In substance, common law fraud is a false representation of a material fact calculated to deceive and which does deceive one to his injury. *Johnson v. Phoenix Mutual Life Ins. Co.*, 300 N.C. 247, 252, 266 S.E.2d 610, 615 (1980). The Complaint adequately states a claim for fraud.

 In Count IV, plaintiffs allege a violation of section 1962(c) and (d) of the Racketeer Influenced and Corrupt Organization (RICO) chapter of Title 18 of the United States Code, 18 U.S.C. §§ 1961–68. In order to withstand a motion to dismiss, the Complaint must sufficiently allege that (1) an enterprise existed; (2) illegal activity was used to conduct the enterprise; (3) the illegal activity was a pattern of racketeering as proscribed by RICO; and (4) the necessary interstate commerce connection existed. *Gilbert v. Bagley*, No. 78–335–WS (M.D.N.C. September 17, 1982). None of defendants' arguments warrant dismissal at this time, and the plaintiffs alleged the RICO claim in a minimally sufficient manner. However, the Complaint lacks sufficient detail in at least one respect and for that reason the Court will require that plaintiffs file a more definite statement in accordance with Fed.R.Civ.P. 12(e). 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1378 at 773 (1969).

 Durham Hosiery as a corporation and Cralle and Schoenhut as its directors and officers may be collectively deemed an enterprise under 18 U.S.C. § 1961(4). Although an enterprise is broadly defined to include a group of persons associated together for a common purpose and functioning as a continuing unit, the enterprise must be an entity separate and distinct from the pattern of activity in which it engages. *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246, 255 (1981). Defendants Russell and Barnett were not a part of Durham Hosiery and thus may not be considered to be a part of the enterprise.[4]

"Racketeering activity" includes acts of mail fraud, wire fraud, and fraud in the sale of securities, and a "pattern" is two or more acts. 18 U.S.C. § 1961(1), (5). The Complaint sets out several transactions of securities purchases and notices to plaintiffs via the mails which might qualify as predicate acts under 18 U.S.C. § 1961(1). However, since it is possible that some of these transactions are not predicate acts and because the Complaint does not plainly identify which specific acts the plaintiffs contend are RICO predicate acts, the Court will require plaintiffs to submit a more definite statement that identifies with particularity the alleged conduct of defendants which qualifies as a pattern of racketeering activity.

 As their final ground for dismissal, defendants plead the statute of limitations to the Rule 10b–5 claim and the RICO claim. Since neither Rule 10b–5 nor RICO contain express statute of limitations, the most clearly analogous state limitations apply. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

 The parties agree that the two year limitation of N.C.Gen.Stat. § 78A–56(f) applies to the Rule 10b–5 claim.[5] Federal law controls the commencement of the running of the limitation period. *Newman v. Prior*, 518 F.2d 97 (4th Cir.1975). In securities fraud, the statute "does not begin to run until the fraud is either actually known or should have been discovered by the exercise of due diligence." 518 F.2d at 100. Thus, it is not only the subjective judgment of the plaintiffs which is relevant but also an objective standard of reasonable diligence in discovering the alleged

---

4. Plaintiffs apparently concede that Barnett and Russell are not a part of the alleged RICO enterprise. Brief in Opposition to Defendants' Motion to Dismiss at 46 (December 12, 1983).

5. N.C.Gen.Stat. § 78A–56(f) provides that "[n]o person may sue under this section more than two years after the sale or contract of sale." While there has not in the strict sense been a "sale" here, the reasoning of the "forced seller doctrine" should apply to this statute since the substantive statute to which it corresponds, N.C. Gen.Stat. § 78A–56(a), is similar to Rule 10–b–5.

fraud. *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 644 F.2d 690 (8th Cir.1981).

The proxy statement was mailed to plaintiffs on December 22, 1980. Plaintiffs' voted against the merger on January 1, 1981, and had their stock certificates marked with a notation of dissent on January 27, 1981. Plaintiff Bruce Umstead requested a copy of Durham Hosiery's 1980 annual report on May 22, 1981, which defendant Russell denied on June 1, 1981, and informed Umstead that Durham Hosiery recognized no stockholder rights. Umstead, through his attorney, requested that the fair value of his stock be determined according to the Virginia statutory appraisal remedy on September 21, 1981. Defendant Russell denied this request on September 29, 1981. Plaintiffs Bruce Umstead and Farthing demanded payment for the fair value of their shares on January 7, 1982, and this action was filed on October 31, 1983. Whether plaintiffs knew or should have known of the alleged fraud cannot be ascertained from these scant facts. *Gurley v. Documation Inc.,* 674 F.2d at 259.

The parties differ on whether the two year securities fraud limitations period applies to the RICO claim or whether it is governed by the three year period for fraud. For purposes of the instant motion to dismiss, which period governs is irrelevant. If the fraud limitations period governs, the action is timely, and if the securities fraud limitation applies, the Court cannot at this time determine when plaintiffs should have discovered the fraud. While the Court recognizes that defendants could eventually establish viable defenses based on the statute of limitations or the absence of culpable conduct supporting a RICO claim, at this juncture the Complaint, viewed in the light most favorable to plaintiffs, survives defendants' Motion to Dismiss.

IT IS, THEREFORE, ORDERED that defendants' Motion to Dismiss be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiffs shall file a more definite statement identifying with particularity the acts of defendants alleged to be RICO predicate acts as defined by 18 U.S.C. § 1961(1) within ten (10) days from the date of this Order. Thereafter, defendants shall file an Answer within twenty (20) days from the date of service of the more definite statement.