**W. Steven ARNOLD, Plaintiff,**

v.

**Neil MORAN, et al., Defendants.**

**Civ. A. No. 88–0298–A.**

United States District Court, E.D. Virginia, Alexandria Division.

May 26, 1988.

C. Sanders McNew, Richard Seaman, Jack B. Gordon, Washington, D.C., for plaintiff.

John Stoppelman, Richard Binstein, Washington, D.C., Edward Gross, Fairfax, Va., for defendants Moran, Bugel and Capital Transport, Inc.

## MEMORANDUM OPINION

CACHERIS, District Judge.

The court has before it a Motion to Dismiss the Complaint and for Sanctions brought by Defendants Moran, Bugel and Capital Transport, Inc.

### Facts

In January 1984, W. Steven Arnold, Henry Chin and Johnson Chin founded a Virginia corporation, A.C.C. Enterprises, Inc. ("A.C.C.") to provide courier services in the Washington metropolitan area. Each founder owned one-third of A.C.C.'s outstanding stock. Capital Transport, Inc. is a Virginia Corporation which does business under the name "Capital Courier." In 1985, Capital was engaged in the business of providing regional air transport services and desired to acquire a Washington area courier to supplement its corporate activities. Plaintiff Arnold alleges that the defendants undertook a fraudulent scheme whereby Capital eventually acquired two-thirds of A.C.C.'s stock and subsequently fraudulently and unlawfully misappropriated A.C.C.'s business and assets.

Specifically, defendant Neil Moran was a vice-President, Chief Financial officer and Director of Capital and allegedly schemed with the other defendants to misappropriate A.C.C.'s business and assets and to misappropriate Arnold's interest in A.C.C. Defendant James Bugel was a Capital vice-president and Director and allegedly committed tortious acts against the plaintiff.

Plaintiff alleges that during 1984 and 1985, A.C.C. had become a profitable business. In April, 1985, the founders decided to solicit bids through newspaper advertisements for the sale of their business. Capital responded to the advertisement and, through defendants John E. Lee[1] and Bugel, offered to purchase the interests of the Chins and Arnold for $15,000.00 each. Arnold desired to keep his interest in the corporation. The Chins also decided to retain their interests in A.C.C. if the sale of their shares would jeopardize Arnold's interests.

In order to acquire the Chins' interests in A.C.C., defendants Capital, Lee and Bugel falsely represented to Arnold and the Chins that if the Chins sold their stock, A.C.C. would continue as an independent business and not be liquidated. Further, Arnold could continue as an A.C.C. shareholder and employee. Despite these representations, the Complaint alleges that the defendants planned to misappropriate A.C.C.'s assets and eventually dissolve the com-

---

1. Defendant John E. Lee, who is not a moving party on the motion at bar, was President, Registered Agent and a Director of Capital.

pany—thereby misappropriating Arnold's interest in A.C.C.

Plaintiff brings several Counts against the defendants, alleging *inter alia* violations of federal securities laws, RICO, and state statutory and common law claims.[2]

Defendants now move this court to dismiss plaintiff's claims on the grounds that the court lacks subject matter jurisdiction over the complaint[3] and that the plaintiff has failed to state a claim upon which relief can be granted.[4] The motion to dismiss specifically challenges the alleged violations of federal law. Defendants contend that if the federal claims are dismissed, this court would no longer retain jurisdiction over the pendent state claims.

On a motion to dismiss, dismissal is not warranted "unless it appears to a certainty that the [non-moving party] would be entitled to no relief under any state of facts which could be proven in support of its claim." *Adams v. Bain,* 697 F.2d 1213, 1216 (4th Cir.1982). Therefore, in deciding the motion to dismiss, the court will accept all of the plaintiff's allegations in his Complaint as true.

#### Securities Fraud

■ In Count II, plaintiff claims a violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and the rules and regulations promulgated thereunder, 17 C.F.R. § 240.10b–5. The thrust of this Count is that the defendants manipulatively and deceptively contrived to misappropriate Arnold's interest in A.C.C., thereby causing him to lose the benefit of A.C.C. accounts that have been transferred to Capital and to suffer other damage.

Defendants move to dismiss the Securities claim on the ground that the plaintiff lacks standing to assert a violation of Section 10(b) or Rule 10b–5 of the securities laws. Specifically, Arnold fails to allege that he is a purchaser or seller of securities.

In order for a private plaintiff to have standing to bring an action under Section 10(b) or Rule 10b–5, the plaintiff must have been a purchaser or seller of securities. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 731, 95 S.Ct. 1917, 1923, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461, 463 (2d Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). Relying on *International Data Bank, Ltd. v. Zenkin,* 812 F.2d 149 (4th Cir.1987), defendants contend that the plaintiff lacks standing because he has not sold securities. A straightforward application of the *Zepkin* opinion to the facts now before the court indicates that the defendants are clearly correct, as Arnold has never been involved in an actual sale of his interest in A.C.C.

In response, Mr. Arnold alleges that his standing arises from an exception to the traditional standing analysis under the securities laws in that he was a "forced seller"[5] of his interest in A.C.C. The forced

---

**2.** The Counts are as follows:
   I—Fraud
   II—Securities Fraud
   III—Breach of Fiduciary Duty
   IV—Conspiracy
   VI—RICO
   VII—RICO
   VIII—RICO
   IX—Breach of Contract
   X—Tortious Interference
Plaintiff has apparently misnumbered the Counts in his complaint and no Count V appears.

**3.** Fed.R.Civ.P. 12(b)(1).

**4.** Fed.R.Civ.P. 12(b)(6).

**5.** The "forced seller" doctrine was first established in *Vine v. Beneficial Finance Co.,* 374 F.2d 627 (2d Cir.), *cert. denied,* 389 U.S. 970, 88 S.Ct.

463, 19 L.Ed.2d 460 (1967). The Second Circuit held that a minority shareholder, faced with the choice of either holding stock in a nonexistent corporation or exchanging his shares for value following a short form merger, was a seller for purposes of 10b–5 standing. Since the *Vine* decision, a substantial number of reported cases have applied the doctrine.

Its continued validity in the wake of the Supreme Court's decision in *Blue Chip Stamps,* which reiterated the purchaser-seller requirement, is well recognized. The Fifth Circuit, in particular, has observed that, even though the Supreme Court did not discuss the "forced seller" doctrine in *Blue Chip Stamps,* the Fifth Circuit would continue to apply it. *Alley v. Miramon,* 614 F.2d 1372, 1385–87 (5th Cir.1980). No Circuit has expressly rejected the validity of the doctrine, although the Seventh Circuit recently wrote that it "has yet to accept or reject the

seller doctrine "provides that where a defendant is engaged in a scheme for the purpose of forcing the plaintiffs to convert their shares for money or other consideration, such acts by the defendant allow a plaintiff standing to sue under the securities act." *Mosher v. Kane*, 784 F.2d 1385, 1389 (9th Cir.1986), *overruled on other grounds, In re Washington Public Power Supply System Securities Litigation*, 823 F.2d 1349, 1351 (9th Cir.1987); *See generally*, Annot., 59 A.L.R.Fed. 10 (1982). The doctrine's application is limited to "securities transactions resulting in an intra-firm freeze-out of one group of investors by another." *Rand v. Anaconda–Ericsson*, 794 F.2d 843, 847 (2d Cir.1986), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed. 2d 582.

The court finds that the "forced seller" doctrine applies to the factual allegations in this case. The Plaintiff primarily relies on the case of *Coffee v. Permian Corp.*, 434 F.2d 383 (5th Cir.1970) *cert. denied* 412 U.S. 920, 93 S.Ct. 2736, 37 L.Ed.2d 146, *reh'g denied* 414 U.S. 882, 94 S.Ct. 41, 38 L.Ed.2d 129 (1973). In *Coffee*, a minority stockholder in a company was found to be a "forced seller" when the majority stockholder voted to liquidate the company and appropriate the assets. In this case, the plaintiff alleges that the defendants allowed A.C.C. to be dissolved by failing to pay the corporation's registration fees to the Commonwealth of Virginia. Va.Code § 13.1–752 provides that when a corporation fails to pay its annual registration fees, it automatically ceases to exist by operation of law and the directors of the corporation become trustees in liquidation.[6]

The Complaint specifically alleges that Arnold was told by the defendant Moran that "Arnold owned a one-third interest in a company that was nothing but an empty shell." (Complaint ¶ 21). The key inquiry is whether Arnold's investment was "changed from an interest in a going enterprise into a right solely to a payment of money for [his] shares." *Batchelder v. Northern Fire Lites, Inc.*, 630 F.Supp. 1115, 1120 (D.N.H.1986).

In *Batchelder*, the district court found that shareholders were not "forced sellers" where there was no liquidation of the company, and the company continued to exist "albeit as a shell." *Id.* In the case at bar, however, there clearly was a liquidation. Although a liquidation is usually initiated by the vote of shareholders or directors, in this case the liquidation allegedly occurred because of the failure of A.C.C. to pay its annual fees to the State Corporation Commission. Here, Arnold properly alleges that his ownership interest in A.C.C. has been changed to a claim for cash. Therefore, under the applicable precedents, the plaintiff is a "forced seller" and has standing under the Securities Act to assert his

'forced seller' doctrine and we express no view on the continued efficacy or scope of the doctrine." *Ray v. Karris*, 780 F.2d 636, 640 n. 1 (7th Cir.1985).

The Fourth Circuit has never issued a published opinion addressing the "forced seller" concept. However, two district courts in the Circuit have recognized its continued validity and have applied the doctrine. *See Federal Deposit Ins. Corp. v. Kerr*, 637 F.Supp. 828, 836 (W.D.N. C.1986); *Umstead v. Durham Hosiery Mills, Inc.*, 578 F.Supp. 342, 346 (M.D.N.C.1984). This court finds that the "forced seller" doctrine remains a viable, though limited, exception to the 10b–5 "purchaser-seller" requirement.

**6.** Va.Code § 13.1–752 provides in part:

Automatic termination of corporate existence.—B.2. If any domestic corporation fails to pay by June 1 of the year assessed the annual registration fee, together with any penalty and interest, the Commission shall mail notice to the corporation of its impending termination of corporate existence. Such corporation shall be thereupon automatically terminated if any such fee, penalty, or interest is unpaid as of September 1 of that year, and its properties and affairs shall pass automatically to its directors as trustees in liquidation. The trustees shall proceed to (i) collect the assets of the corporation, (ii) sell, convey and dispose of such of its properties as are not to be distributed in kind to its stockholders, (iii) pay, satisfy and discharge its liabilities and obligations and (iv) do all other acts required to liquidate its business and affairs. After paying or adequately providing for the payment of all its obligations, the trustees shall distribute the remainder of its assets, either in cash or in kind, among its stockholders according to their respective rights and interests.

claims.[7]

For these reasons, Defendant's Motion to Dismiss the Securities Fraud Count is DENIED.

## RICO

■ Plaintiff seeks treble damages and attorneys' fees for civil violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68.[8] Defendants contend that the plaintiff cannot avail himself of the statute because he fails to meet RICO's requirement of alleging a "pattern of racketeering activity." [9]

The "pattern of racketeering activity" plaintiff alleges includes *inter alia*, "the allegedly fraudulent transaction by which defendants, through Capital, acquired the Chins' A.C.C. stock in 1985; the defendants' subsequent fraud in connection with Mr. Arnold's forced sale of his own stock; the defendants' diversion of funds belonging to Mr. Arnold; and defendants' efforts to conceal their unlawful conduct." (Plain-

tiff's Opposition to Defendants' Motion to Dismiss at 9). Under the Fourth Circuit's line of cases requiring a strict adherence to RICO's pattern requirement,[10] this plaintiff's allegations are inadequate.

The Fourth Circuit has recently issued a stern warning that "this circuit will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims." *Flip Mortgage*, 841 F.2d at 538. This case, as alleged, presents a series of events as part of a single scheme perpetrated by Capital and its officers and directors against a single victim, Arnold. The *Flip Mortgage* opinion clearly rejects this kind of complaint as inadequate to show a "pattern of racketeering activity" under RICO.[11]

Plaintiff also argues that he has properly pled under 18 U.S.C. § 1962(b) and that the statutory language under this RICO section indicates that a single scheme would be sufficient to meet the pattern requirement.[12] In essence, plaintiff contends that

---

7. Defendants contend that regardless of whether the plaintiff was a "forced seller", the alleged fraud was not "in connection with" the forced sale. (Reply in Support of Defendants Moran, Bugel and Capital Transport, Inc.'s Motion to Dismiss at 2–3). In this case, as the complaint alleges, the defendants schemed to terminate the plaintiff's interest in A.C.C. Part of that plan was the failure to pay the required registration fees, thus causing the liquidation of A.C.C. and changing the nature of Arnold's interest in the corporation. The court finds that the plaintiff has properly plead that the dissolution and subsequent liquidation of the corporation were "in connection with" the alleged securities fraud.

8. Plaintiff asserts that the requisite predicate acts for his RICO claim are acts of mail and wire fraud and violations of the securities laws. 18 U.S.C. § 1961(1)(B) and § 1961(1)(D). Defendants contend that the plaintiff has failed to sufficiently allege the predicate acts. In light of the court's ruling on the RICO "pattern" requirement, the court does not need to reach the predicate act issues.

9. 18 U.S.C. 1961(5) states:

"pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprison-

ment) after the commission of a prior act of racketeering activity;

10. *See Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir.1988); *Eastern Publishing and Advertising v. Chesapeake Publishing and Advertising*, 831 F.2d 488, 491–92 (4th Cir.1987); *HMK Corporation v. Walsey*, 828 F.2d 1071 (4th Cir.1987) *cert. denied*, —— U.S. ——, 108 S.Ct. 706, 98 L.Ed.2d 657 (1988); and *International Data Bank v. Zepkin*, 812 F.2d 149, 154–55 (4th Cir.1987).

11. Plaintiff argues that this court's decision of his RICO claims should be deferred until the United States Supreme Court has the opportunity to resolve the conflict between the circuits as to the statutory meaning of "pattern of racketeering activity." *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 829 F.2d 648 (8th Cir.1987), *cert. granted*, —— U.S. ——, 108 S.Ct. 1219, 99 L.Ed.2d 420 (1988). This court has no guarantee that a Supreme Court decision will aid its decision on this issue. Therefore, the court will rule on the issue and follow the appropriate Fourth Circuit precedent.

12. 18 U.S.C. 1962(b) provides:

It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is en-

the prohibition in 1962(b) "is directed against a scheme which by definition can have but a single purpose—acquiring or maintaining any interest or control over an enterprise." (Plaintiff's Opposition to Defendant's Motion to Dismiss at 10). The court finds this argument unpersuasive. While the Fourth Circuit decisions defining the "pattern" requirement involve allegations under 1962(c), no reason exists for 1962(b) to have a different requirement. The same policy considerations which call for limiting access to federal courts for plaintiffs involved in ordinary business disputes are equally persuasive in the 1962(b) context.[13] Also, the RICO statute explicitly defines "pattern of racketeering activity" in 18 U.S.C. § 1961(5), and it would be nonsensical for there to be different judicial interpretations of the "pattern" requirement under 1962(b) and 1962(c).

For these reasons, plaintiff's motion to dismiss the RICO Counts is GRANTED.

### Rule 11 Sanctions

■ Defendants also move for Rule 11 sanctions against the plaintiff on the grounds that the Fourth Circuit has repeatedly warned against suits such as the plaintiff's and the *Zepkin* opinion clearly indicates that this case would not survive a motion to dismiss. The test is whether the plaintiff had "a good faith argument for the extension, modification, or reversal of existing law" to assert his claim. *See* Fed. R.Civ.P. 11. Even though the plaintiff's RICO claim is meritless in the Fourth Circuit, there is a split of authority among the Circuit courts and another Circuit might have let the claim stand.[14] Accordingly,

defendants motion for sanctions is DENIED.

An appropriate Order shall issue.

---

gaged in, or the activities of which affect, interstate or foreign commerce.

**13.** As Judge Butzner recently wrote in *Flip Mortgage,* 841 F.2d at 538:

[A] great many ordinary business disputes arising out of dishonest business practices or doubtful accounting methods, such as have until the present been redressed by state remedies, could be described as multiple individual instances of fraud, if one chose to do so.

But to adopt such a characterization would transform "every such dispute ... [into] a cause of action under RICO."

**14.** *See Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), *reh'g. denied,* —— U.S. ——, 108 S.Ct. 1588, 99 L.Ed.2d 903 (1988). (Test for validity of a RICO claim only requires a continuing operation and a common purpose or plan served by the various fraudulent acts.)