998 F.2d 1256
 Fed. Sec. L. Rep. P 97,652
 J. Scott COOKE; Sanford H. Rudolph; William MacKay;
Joseph W. Burns, Trustee of the estate in bankruptcy of
Manufactured Homes, Incorporated, All on behalf of
themselves and all persons who purchased stock of
Manufactured Homes, Inc. between May 2, 1988 and June 27,
1990, excluding Manufactured Homes, Inc. (and its
subsidiaries, affiliates, and divisions) and the individual
defendants and their immediate families, Plaintiffs-Appellants,
v.
MANUFACTURED HOMES, INCORPORATED; Robert M. Sauls; Kenneth
A. Hathaway; Jeffrey J. Brown; Robert A. Brown;
Wayne F. Sloop; Robert L. Berner;
David B. Whelpley, Defendants-Appellees,
and
Harald Bakkebo, Defendant.
 
 No. 93-1005.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 4, 1993.
Decided July 9, 1993.
Amended by Order Filed July 21, 1993.
 Norman Barrett Smith, Smith, Follin & James, Greensboro, NC, argued (Margaret Rowlett, on brief), for plaintiffs-appellants.
 Peter Joseph Juran, House & Blanco, P.A., Winston-Salem, NC, argued (Reginald F. Combs, on brief), for defendants-appellees.
 Before WILKINS, Circuit Judge, SPROUSE, Senior Circuit Judge, and HALLANAN, United States District Judge for the Southern District of West Virginia, sitting by designation.
 OPINION
 WILKINS, Circuit Judge:
 
 
 1
 J. Scott Cooke, as representative for a class of investors in Manufactured Homes, Incorporated (MH) stock, appeals the grant of summary judgment in favor of MH.[1] Appellants brought four claims for violations of federal securities law: (1) violations of § 10(b) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C.A. § 78j(b) (West 1981), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 (1992) (liability for manipulative or deceptive practices in connection with the purchase or sale of a security); (2) violations of § 18 of the Exchange Act, 15 U.S.C.A. § 78r (West 1981) (liability for misleading statements); (3) violations of § 15 of the Securities Act of 1933 (Securities Act), 15 U.S.C.A. § 77o (West 1981), and § 20 of the Exchange Act, 15 U.S.C.A. § 78t (West 1981 & Supp.1993) (liability of controlling persons); and (4) secondary violations of federal securities laws (aider and abettor claims). The district court ruled that all claims were barred because any alleged misrepresentations or omissions by MH were countered by prolific, contrary information disseminated to the market. Appellants maintain that summary judgment was inappropriate because there are genuine issues of material fact concerning when the market was fully apprised of the finances of MH and that the district court applied the incorrect statute of limitations for the § 10(b) and Rule 10b-5 claims. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
 
 I.
 
 2
 MH financed the sales of mobile homes and then resold the mortgages to third-party lenders under recourse financing. The financial picture of MH during the relevant time period revealed a company in decline. Precisely when the market was fully apprised of the failing finances of MH is at the crux of this suit. Appellants claim that MH suffered cash flow problems, that the general financial condition of the corporation deteriorated steadily, and that these facts were omitted and/or misrepresented. MH claims that the state of its financial health was readily available to the Appellants through a plethora of information disseminated to the market and the fluctuations in value of MH stock.
 
 
 3
 Through several press releases issued during 1988, MH disclosed its declining financial status. Also, the annual reports of MH reveal the picture of a corporation experiencing financial hardship: net earnings and earnings per share decreased in each subsequent year, while operating costs increased. Apart from the financial reports issued by MH, the press also reported the financial condition of the corporation. For instance, on May 2, 1988, an article in the Winston-Salem Journal (Journal ), reported that the entire manufactured home industry was in a slump and specifically cited MH as suffering financial setbacks because of industry wide losses. Again, on May 7, 1988, the Journal reported that the earnings and revenues of MH were down for the first quarter of 1988 compared to the first quarter of 1987. Subsequently, on September 19, 1988, Barron's, a national financial journal, published an article criticizing the practices of MH of front-loading profits by using possibly false assumptions and of issuing misleading press releases and possibly inaccurate disclosures to the Securities Exchange Commission (SEC). The article also criticized MH as having problems with its accountants, attributing these problems to questionable accounting practices by MH. The day that Barron's released this article, MH responded by issuing a press release disclaiming any impropriety and stating that all of its disclosures complied with SEC rules and regulations.
 
 
 4
 On November 23, 1988, the Journal reported that the stock of MH had dropped 35 percent in the previous 15 trading days and that MH was experiencing substantial financial losses. Then, on December 17, 1988, the Journal announced not only that MH stock had lost 9.8 percent of its value the preceding day and 47 percent of its value since October 31, 1988, but that MH was suffering from general financial failure.
 
 
 5
 Despite this troubled financial picture, MH issued press releases during 1988 stating that it was enjoying a degree of financial prosperity. For example, on April 12, 1988, MH reported that it was negotiating a profitable contract with an insurer. On May 26, Robert Sauls, Chief Executive Officer of MH, stated in a press release that he was "looking for record earnings for 1988." On June 27, 1988, MH announced that it was planning to repurchase 400,000 shares of its common stock, stating that the shares were an "attractive investment in light of the Company's strong earnings prospects for the future." The release further reported that sales were "good" in April and May of 1988 and that this trend would likely continue in June. Also, even though the annual reports revealed fiscal decline, they also reported promising financial prospects. This hopeful financial picture never materialized. In June of 1990, trading of the stock of MH was suspended, and the stock was ultimately delisted.
 
 
 6
 On June 29, 1990, Appellants filed suit, averring that MH omitted or misrepresented material information about its declining financial status. The district court, adopting the recommendation of the magistrate judge, certified a class and defined its parameters as those who purchased MH stock between May 2, 1988 and June 27, 1990, excluding MH and its subsidiaries. It also concluded as a matter of law that on December 17, 1988 the market was fully apprised of the financial failure of MH. The district court then granted summary judgment in favor of MH with respect to all claims.
 
 
 7
 Appellants raise two contentions on appeal. First, they claim that because the information available to the market included misrepresentations and/or omissions by MH, whether the market justifiably relied on this conflicting information gives rise to a genuine issue of material fact, and thus the district court erred in granting summary judgment in favor of MH. They contend that this information was still sufficiently conflicting on December 17, 1988 to preclude the court from granting summary judgment on or after this date. Appellants also assert that even if December 17, 1988 is the date on which the market was apprised of the instability of the finances of MH, the district court improperly granted summary judgment with respect to the claims of investors who purchased their stock prior to this date. Second, Appellants contend that the limitations period for the § 10(b) and Rule 10b-5 claims is two years under the dictates of § 27A of the Exchange Act, 15 U.S.C.A. § 78aa-1(a) (West Supp.1993). Thus, since this action was filed June 29, 1990, Appellants assert that it is timely.
 
 
 8
 Conversely, MH asserts that summary judgment was properly granted because the market was apprised of the financial health of the corporation at all relevant times. Moreover, MH contends that this action is time-barred because the proper limitations period is one year under Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, --- U.S. ----, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991).
 
 
 9
 We first address whether summary judgment was properly granted with respect to all claims, and then the proper date that Appellants were deemed to be on notice for purposes of commencement of the statute of limitations on the § 10(b) and Rule 10b-5 claims. After addressing the limitations issue, we turn to the claims brought under § 15 of the Securities Act, §§ 18 and 20 of the Exchange Act, and the aider and abettor claims.
 
 II.
 
 10
 Summary judgment is proper if, viewed in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.1985). Federal Rule of Civil Procedure 56(c) requires that the court enter judgment against a party who, "after adequate time for discovery ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party is entitled to the most favorable inferences that may reasonably be drawn from the forecasted evidence, Ross, 759 F.2d at 364, but it "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another," Beale v. Hardy, 769 F.2d 213, 214 (4th Cir.1985). The essence of the inquiry that the court must make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Summary judgment is proper "if the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." Id. at 248, 106 S.Ct. at 2510. We review de novo the decision of the district court to grant summary judgment. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir.1988).
 
 
 11
 To establish liability under § 10(b)[2] and Rule 10b-5[3], a plaintiff must prove the following elements: "(1) the defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's damages." Myers v. Finkle, 950 F.2d 165, 167 (4th Cir.1991).[4] If, as here, a plaintiff pursues the action based on a fraud on the market theory, the plaintiff is relieved of proving the element of direct reliance.[5] See Basic, Inc. v. Levinson, 485 U.S. 224, 241-50, 108 S.Ct. 978, 988-93, 99 L.Ed.2d 194 (1988). As enunciated in Basic:
 
 
 12
 The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.
 
 
 13
 Id. at 241-42, 108 S.Ct. at 989 (quoting Peil v. Speiser, 806 F.2d 1154, 1160-61 (3d Cir.1986)). Under this theory, a "plaintiff claims that he was induced to trade stock not by any particular representations made by corporate insiders, but by the artificial stock price set by the market." In Re Apple Computer Secs. Litig., 886 F.2d 1109, 1114 (9th Cir.1989), cert. denied, 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990). Thus, under the fraud on the market theory, Appellants "need not show that they themselves actually relied on any particular misrepresentation or omission." In re Convergent Technologies Secs. Litig., 948 F.2d 507, 512 n. 2 (9th Cir.1991). Rather, "they need only show that they relied on the integrity of the price of the stock as established by the market, which in turn is influenced by information or the lack of it." Id. This theory therefore "recognizes that most investors rely on the market to evaluate information for them, rather than on their own independent analysis of a stock's value." Id. Accordingly, Appellants' "reliance on the market ... is equivalent to reliance upon statements made to the market, or the nondisclosure of material information." Id.
 
 A.
 
 14
 We first address the contention that summary judgment was improperly granted with respect to those claims accruing prior to December 17, 1988. Appellants assert that the misrepresentations and/or omissions by MH created a conflicting mix of information on which the market justifiably relied and that the reliance of the market on this mix of information led to an artificially inflated stock price, thereby giving rise to a genuine issue of material fact. Accordingly, they contend that summary judgment was inappropriate. Applying the summary judgment standard, we conclude that prior to December 17, 1988, there was a sufficient total mix of information as to whether any misrepresentations and/or omissions by MH were materially misleading to the market. Hence, granting summary judgment against all investors was improper. For example, the press releases issued during early 1988 present a promising financial outlook: the April 12th release stated that MH was involved in negotiations with an insurance company that would act as a guarantor on its loans and that the corporation "look[ed] forward to returning to a good level of earnings performance in 1988." The May 26th press release depicted MH in glowing health by reporting that it was "looking for record earnings." Similarly, the June 27th press release stated that MH was going to purchase 400,000 shares of its own stock because it was an attractive investment. By August of 1988, however, MH was reporting that net earnings were down. By late fall of 1988, the Journal and Barron's had both published articles detailing the fiscal straits of MH. Again in November of 1988, MH issued a press release stating that revenues and earnings had decreased, while costs had increased. The promising representations in the press releases issued by MH do not wholly comport with the representations announcing declining earnings and rising costs or with the articles detailing the precarious state of the finances of MH.
 
 
 15
 This total mix of information of failing finances and fiscal growth, prior to December 17, 1988, sufficiently gives rise to different interpretations as to whether the representations and/or omissions made by MH were materially misleading to the market. See Basic, 485 U.S. at 239-41, 108 S.Ct. at 987-88 (holding that generally § 10(b) and Rule 10b-5 claims based on the fraud on the market theory are fact-specific and usually left to the trier of fact); see also TSC Indus. v. Northway, Inc., 426 U.S. 438, 450, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976) (holding that materiality of information is a "mixed question of law and fact" and generally not properly resolved by summary judgment). The impression that this mix of information conveyed cannot be resolved as a matter of law. See Hanon v. Dataproducts Corp., 976 F.2d 497, 502 (9th Cir.1992) (noting that whether corporate statements or omissions are materially misleading for purposes of liability under § 10(b) usually cannot be "conclude[d] ... as a matter law"). We therefore conclude that Appellants have presented sufficient evidence to raise a genuine issue of material fact with respect to the mix of information prior to December 17, 1988.
 
 B.
 
 16
 While securities claims are often fact-specific and properly resolved by a jury, "summary judgment may be granted in appropriate cases." In re Apple, 886 F.2d at 1113 (affirming in part a grant of summary judgment in a securities fraud action); see also Ross v. Bank South, N.A., 885 F.2d 723, 731 (11th Cir.1989) (en banc) (sustaining summary judgment in securities fraud action), cert. denied, 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 287 (1990). Thus, while we conclude that genuine issues of material fact exist with respect to the mix of information prior to December 17, 1988, we agree with the district court that as a matter of law summary judgment was proper for claims accruing on or after this date because by December 17, 1988, the market was fully apprised of the failing financial condition of MH. See Brumbaugh v. Princeton Partners, 985 F.2d 157, 162 (4th Cir.1993) (holding that whether a securities plaintiff has been apprised of fraud "can be decided as a matter of law"). On this date, the Journal reported a gross decline in the value of the stock of MH, a trend that was first reported in an article on November 23, 1988. This latter article further announced that MH reported substantial losses for the third quarter of 1988 and that "[t]imes have been tough" for the corporation. Also, Barron's had published an article on September 19, 1988, vigorously attacking the fiscal responsibility and financial health of MH. That the press reported this negative publicity apprised the market of the fiscal difficulties that MH was experiencing and more than cured any omissions by MH. See In re Apple, 886 F.2d at 1116 (holding that "[t]he market could not have been made more aware" of the investment risk because the risk was thoroughly reported by the press). Additionally, MH announced through a press release that revenues and earnings were down for the third quarter of 1988, thereby conceding that its fiscal health was in decline. Thus, in tandem and in proximity to the other indicia of fiscal distress, both the local newspaper and a national financial journal reported the depressed finances of MH. Accordingly, we hold that the market was so overwhelmed with information questioning the financial integrity of MH by December 17, 1988, that no reasonable trier of fact could conclude otherwise. See id. (affirming judgment as a matter of law because the market was fully cognizant of the risk of investing in the stock). Therefore, summary judgment was properly granted with respect to claims accruing on or after this date.
 
 III.
 A.
 
 17
 Having concluded that the market was thoroughly apprised of the financial straits of MH by December 17, 1988, however, does not end our inquiry. A determination of when the market was sufficiently apprised that MH was experiencing grave financial difficulties is critical because in this case that date also commences the limitations period for the § 10(b) and Rule 10b-5 claims and must be resolved by federal law, see Holmberg v. Armbrecht, 327 U.S. 392, 395-97, 66 S.Ct. 582, 584-85, 90 L.Ed. 743 (1946) (holding that while state law determines limitations period when no federal limitations period is provided, federal law determines date on which limitations period begins to run).
 
 
 18
 We recently held, in the context of securities fraud claims, that "[i]nquiry notice is triggered by evidence of the possibility of fraud, not by complete exposure of the alleged scam." Brumbaugh, 985 F.2d at 162. Provided that the underlying facts are not disputed, inquiry notice can be decided by the court as a matter of law. Id. A securities plaintiff must exercise due diligence in the investigation of misconduct. See id. The exercise of due diligence is measured by an objective standard, see id., and whether due diligence was exercised must be judged "solely under the peculiar circumstances of each case." deHaas v. Empire Petroleum Co., 435 F.2d 1223, 1226 (10th Cir.1970) (citation omitted). Thus, as soon as Appellants were apprised of the possibility of fraud, they were under a duty to investigate any misrepresentations made by MH. For the same reasons that we held summary judgment was properly granted as to claims on or after December 17, 1988, we also conclude that December 17, 1988 was the date by which Appellants knew or should have known of the alleged fraud had they exercised due diligence. Thus, we hold that the statute of limitations also commenced running on December 17, 1988, on the § 10(b) and Rule 10b-5 claims.
 
 B.
 
 19
 The next question then becomes the length of the limitations period--an issue not addressed by the district court. MH asserts that the proper limitations period is one year, as provided by Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, --- U.S. ----, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Under a one-year limitations period, MH contends that summary judgment was proper even as to claims accruing prior to December 17, 1988, because these claims are time-barred. Conversely, Appellants argue that the limitations period for the § 10(b) and Rule 10b-5 claims is governed by § 27A. Under § 27A, the statute of limitations for the § 10(b) and Rule 10b-5 claims is supplied by the analogous state-law claim. See Henderson v. Scientific-Atlanta Inc., 971 F.2d 1567, 1571 (11th Cir.1992) (noting that under § 27A, federal courts apply the limitations period of the analogous state-law claim as it existed prior to Lampf to the federal securities claims). Under North Carolina law, the applicable limitations period for claims most analogous to the § 10(b) and Rule 10b-5 claims is two years. See Bizzell v. Hemingway, 548 F.2d 505, 508 (4th Cir.1977) (noting that North Carolina law provides for a two-year period for the analogous state-law claim); N.C.Gen.Stat. § 78A-56(f) (Michie 1990) (providing a two-year limitations period). Resolution of the proper limitations period requires us to address the constitutionality of § 27A, a question of first impression for this court.
 
 1.
 
 20
 Section 10(b) and Rule 10b-5 conspicuously do not provide for limitations periods. Traditionally, therefore, federal courts have borrowed the limitations period from the most analogous state statute and applied it as the proper limitations period for § 10(b) and Rule 10b-5 claims. See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976) (noting that because § 10(b) does not supply a limitations period, federal courts apply "the law of limitations of the forum State"). In Lampf, however, the Supreme Court discarded the former practice of borrowing state statutes of limitations for private causes of action under § 10(b) and Rule 10b-5 and established a uniform statute of limitations for federal securities claims: such claims "must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." Lampf, --- U.S. at ----, 111 S.Ct. at 2782. The Court further held that the doctrine of equitable tolling did not apply to this limitations scheme. Id. Finally, the Court applied this rule retroactively to the parties before it. Id. In James B. Beam Distilling Co. v. Georgia, --- U.S. ----, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), an opinion delivered the same day as Lampf, the Court held that when it applied a new civil rule of law to the litigants in a particular case, that rule must be applied retroactively to all other similarly situated litigants. Id. --- U.S. at ---- - ----, 111 S.Ct. at 2447-48. Accordingly, Beam mandates retroactive application of the one- and three-year rule announced in Lampf.
 
 2.
 
 21
 Appellants contend, however, that Lampf and Beam do not dictate the applicable limitations period because Congress subsequently amended the rules announced in these cases by enacting § 27A, which provides in pertinent part:
 
 
 22
 (a) Effect on pending causes of action.
 
 
 23
 The limitations period for any private civil action implied under section 78j(b) of this title that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.
 
 
 24
 15 U.S.C.A. § 78aa-1(a) (West Supp.1993). Subsection 27A(a) applies to this suit because it was filed June 29, 1990. Under this subsection, we apply the law of this circuit as it existed on June 19, 1991, which provided that the limitations period for the state claim most analogous to § 10(b) and Rule 10b-5 be applied. See Gurley v. Documation Inc., 674 F.2d 253, 258-59 (4th Cir.1982) (applying the two-year limitations period provided by Virginia law for the state claim analogous to § 10(b) and Rule 10b-5).[6] Conversely, MH contends that § 27A violates the separation of powers doctrine because it purports to overrule the retroactive effect of Beam with regard to the Lampf limitations rule without substantively amending the underlying law. MH therefore asserts that Lampf and Beam control this action and compel us to apply a one- and three-year limitations period to the § 10(b) and Rule 10b-5 claims because § 27A is unconstitutional. We disagree with this contention.
 
 3.
 
 25
 The circuits that have addressed the constitutionality of § 27A squarely have held that it passes constitutional muster. See Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co., 993 F.2d 269, 273 & n. 11 (1st Cir.1993) (adopting reasoning of various circuits in holding that § 27A is constitutionally firm); Gray v. First Winthrop Corp., 989 F.2d 1564, 1568-69 (9th Cir.1993) (holding that § 27A does not violate the separation of powers doctrine); Berning v. A.G. Edwards & Sons, Inc., 990 F.2d 272, 277-79 (7th Cir.1993) (holding that § 27A does not violate the rule against selective prospectivity of judicial decisions articulated in Beam and therefore does not violate the separation of powers doctrine); Anixter v. Home-Stake Prod. Co., 977 F.2d 1533, 1543-47 (10th Cir.1992) (holding that § 27A does not violate separation of powers doctrine by prescribing a rule of decision in a particular case), cert. denied, --- U.S. ----, 113 S.Ct. 1841, 123 L.Ed.2d 467 (1993); Henderson, 971 F.2d at 1571-73 (holding that § 27A does not violate the separation of powers doctrine); see also Litton Indus. v. Lehman Bros. Kuhn Loeb, Inc., 967 F.2d 742, 751 n. 6 (2d Cir.1992) (noting in dicta that it was "unimpressed" by the decisions that hold § 27A unconstitutional).[7] We find persuasive the reasoning of the courts of appeals holding that § 27A does not violate the constitution.[8] Therefore, we join these circuits in holding that § 27A does not violate the separation of powers doctrine.
 
 4.
 
 26
 Prior to Lampf, this court applied the limitations period of the most closely analogous state statute for claims based on § 10(b) and Rule 10b-5. See Gurley, 674 F.2d at 258-59. To determine the limitations period for the § 10(b) and Rule 10b-5 claims, we must consult the law of the forum state, North Carolina, which provides for a two-year limitations period for claims analogous to § 10(b). See N.C.Gen.Stat. § 78A-56(f) (providing a two-year limitations period). We therefore hold that a two-year limitations period applies to this action.[9] Because the statute of limitations began to run on December 17, 1988, the complaint is timely because it was filed on June 29, 1990.[10]
 
 IV.
 
 27
 The district court did not address the claims based on § 15 of the Securities Act, §§ 18 and 20 of the Exchange Act, or the aider and abettor claims. Because these claims and the applicable limitations period were not addressed and because they were not thoroughly briefed on appeal, we decline to address them and leave them for consideration on remand.
 
 V.
 
 28
 In summary, we hold that by December 17, 1988, the market was fully apprised of the floundering finances of MH, and thus summary judgment was properly granted with respect to claims accruing on or after, but not before, this date. Prior to this date, there was a mix of information giving rise to a factual issue as to whether Appellants could succeed on their § 10(b) and Rule 10b-5 claims. We therefore affirm the grant of summary judgment as to claims accruing on or after December 17, 1988, and reverse and remand the grant of summary judgment with respect to claims accruing prior to this date. We further conclude that § 27A does not violate the separation of powers doctrine and provides for a two-year statute of limitations; therefore, the complaint was timely filed. Also on remand, we direct the district court to consider the § 15 claim, the §§ 18 and 20 claims, and the aider and abettor claims.
 
 
 29
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 Appellees also include: Robert M. Sauls, Chief Executive Officer of MH; Wayne F. Sloop, Vice President of MH; and Directors of MH, Kenneth A. Hathaway, Jeffrey J. Brown, Robert L. Berner, Robert A. Brown, and David B. Whelpley. For ease of reference, we refer to the Appellees as MH, and to Cooke and the class as Appellants
 
 
 [2]
 Section 10(b) provides:
 It shall be unlawful for any person, directly or indirectly, by the use of any means ...
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 15 U.S.C.A. § 78j (West 1981).
 
 
 [3]
 Rule 10b-5 provides:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
 in connection with the purchase or sale of any security.
 
 
 [17]
 C.F.R. § 240.10b-5 (1992)
 
 
 [4]
 Appellants properly state that privity is not a prerequisite for claims under § 10(b) or Rule 10b-5. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 745, 95 S.Ct. 1917, 1929, 44 L.Ed.2d 539 (1975)
 
 
 [5]
 Although some Appellants claim that they relied on specific misrepresentations by MH, rather than on the market, any claims of individual reliance would be atypical of the Appellant class because in a class action, as here, questions of typicality and commonality must prevail. The fact that some Appellants may have individually relied does not apply to the whole class. See In re the One Bancorp Secs. Litig., 136 F.R.D. 526, 532 (D.Maine 1991) (citing Basic, 485 U.S. at 247, 108 S.Ct. at 991); see also Fed.R.Civ.P. 23(a). Thus, suits by individuals who actually relied on particular misrepresentations by MH are not barred by our opinion. Cf. In re the One Bancorp., 136 F.R.D. at 533 (noting that court has discretion, in cases where individualized claims are made, to "carve out subclasses or to try damages issues separately")
 
 
 [6]
 In Howard v. Haddad, 962 F.2d 328, 330 (4th Cir.1992), we applied the rule of Lampf. The issue of whether § 27A applied was not raised by the parties and thus not addressed in the opinion
 
 
 [7]
 While no court of appeals has held this section to be unconstitutional, some district courts have so ruled. See, e.g., Plaut v. Spendthrift Farm, Inc., 789 F.Supp. 231, 235 (E.D.Ky.1992) (holding that § 27A(b) "is an unconstitutional exercise of legislative power"); TGX Corp. v. Simmons, 786 F.Supp. 587, 592-94 (E.D.La.1992) (holding that § 27A violates the separation of powers doctrine)
 
 
 [8]
 The Supreme Court recently noted that Congress amended the limitations scheme announced in Lampf: "Congress intervened by limiting the retroactive effect of our decision, and the caution in its intervention is instructive.... Congress did no more than direct the applicable 'limitation period for any private civil action implied under ... [§ 10(b) of the 1934 Act] that was commenced on or before June 19, 1991 [the day prior to issuance of Lampf, Pleva ].' " Musick, Peeler & Garrett v. Employers Ins. of Wausau, --- U.S. ----, ----, 113 S.Ct. 2085, 2089, 124 L.Ed.2d 194 (1993) (quoting § 27A) (alteration in original)
 
 
 [9]
 In so holding, we reject the contention of MH that the pre-Lampf law of this circuit was one year under DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983) (stating that federal courts should look to analogous federal law for determining limitations period if "the federal policies at stake and the practicalities of litigation make [the federal] rule a significantly more appropriate vehicle for interstitial lawmaking"). We are in accord with other circuits that have rejected this argument. See, e.g., Henderson, 971 F.2d at 1571 (rejecting the argument that general federal principles compel the courts to discard borrowing the limitations period from state law and look only to federal law for guidance in light of § 27A(a))
 
 
 [10]
 The issue of whether § 78A-56(f) is a statute of limitations or one of repose and how it may affect the class of Appellants was not addressed by the district court, nor was it adequately briefed on appeal. Consequently, we decline to address it and leave it for resolution in the first instance on remand