16 F.3d 410
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 MED-THERAPY REHABILITATION SERVICES, INCORPORATED, Plaintiff-Appellee,
v.
DIVERSICARE CORPORATION OF AMERICA, Defendant & Third Party
Plaintiff-Appellant,
v.
N S & H Incorporated; Brian Center Management Corporation,
Third Party Defendants-Appellees.
MED-THERAPY REHABILITATION SERVICES, INCORPORATED, Plaintiff-Appellee,
v.
DIVERSICARE CORPORATION OF AMERICA, Defendant & Third Party
Plaintiff-Appellant,
v.
N S & H Incorporated; Brian Center Management Corporation,
Third Party Defendants-Appellees.
 Nos. 93-1176, 93-1210.
 United States Court of Appeals, Fourth Circuit.
 Argued: December 7, 1993.
Decided: February 3, 1994.
 
 Appeals from the United States District Court for the Western District of North Carolina, at Statesville. Richard L. Williams, Senior District Judge, sitting by designation. (CA-91-28)
 Glenn Benton Rose, Harwell, Howard, Hyne, Gabbert & Manner P.C., Nashville, Tennessee, for appellant.
 Michael Jackson Betts, Reed, Smith, Shaw & McClay, Pittsburgh, Pennsylvania, for appellees.
 Lin S. Howard, D. Alexander Fardon, Harwell, Howard, Hyne, Gabbert & Manner, P.C., Nashville, Tennessee; James C. Smith, Rayburn, Moon & Smith, Charlotte, North Carolina, for appellant.
 Mary J. Hackett, Reed, Smith, SHaw & McClay, Pittsburgh, Pennsylvania, for appellees.
 W.D.N.C.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before MURNAGHAN, WILKINSON, and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Diversicare Corporation of America (Diversicare) sold the stock of National Speech and Hearing Services, Inc. (National) to MedTherapy Rehabilitation Services, Inc. (Med-Therapy) in April 1988. Pursuant to a stock purchase agreement (the "Agreement"), MedTherapy paid $750,000 in cash for National. In addition, MedTherapy caused National to sign a promissory note to Diversicare for $700,000 (the "Note"). Med-Therapy and its parent corporation, Brian Center Management, Inc., guaranteed the payment of the Note.
 
 
 2
 In April 1991, Med-Therapy brought suit against Diversicare claiming that Diversicare breached its agreement with Med-Therapy; violated Sec. 10(b) of the Securities Exchange Act of 1934; committed common law fraud; violated the North Carolina and Tennessee Securities Acts; and engaged in negligent misrepresentation and omissions. Med-Therapy sought damages, indemnity under the terms of the Agreement, and attorney's fees. Diversicare filed a counter-claim against Med-Therapy and a third-party complaint against National and Brian Center in an attempt to recover the amount due under the Note.
 
 
 3
 The case was tried before a jury in October 1992. In response to Diversicare's motion for judgment as a matter of law, the district court dismissed Med-Therapy's state securities law and negligent misrepresentation and omission claims. The court submitted the rest of the claims to the jury on special verdict forms.
 
 
 4
 The jury found for Med-Therapy on the federal securities and the common law fraud claims, awarding the company $300,000 for the Sec. 10(b) violation, $252,527 for common law fraud, and $1,000 in punitive damages. The jury found against Med-Therapy on the breach of contract claim because Diversicare did not breach any representation or warranty made in Article Four of the Stock Purchase Agreement. Finally, the jury awarded Diversicare the entire amount due under the note--$552,527.[1] The net result of the jury's verdict was a $1,000 victory for Med-Therapy.
 
 
 5
 Both parties submitted several post-trial motions. In a Final Order and Memorandum Opinion, the United States District Court for the Western District of North Carolina granted Med-Therapy judgment on the federal securities fraud and common law fraud claims insofar as liability was concerned. Despite the jury's verdict, however, the court cancelled the Note, denying Diversicare's motion for judgment on its counter-claim for the amount due under the Note plus interest.[2] In addition, the court granted Med-Therapy's motion for declaratory judgment requiring Diversicare to indemnify Med-Therapy for any liability that might arise out of claims that might hereafter be asserted against Med-Therapy relating to National's pre-acquisition cost reports. Denying Med-Therapy's motion for a new trial, and refusing to aggregate the jury's verdicts in favor of Med-Therapy, the court awarded Med-Therapy $301,000[3] and an additional $108,480 in prejudgment interest. In contrast to the $1,000 victory that resulted from the jury's verdict, Med-Therapy won a $497,480 award plus indemnification as a result of the district court's Order.[4] Both Med-Therapy and Diversicare have appealed discrete portions of the district court's Order. Med-Therapy has appealed the district court's denial of its motion for a new trial on the issue of damages. In the alternative, Med-Therapy has argued that the district court should have aggregated the jury's verdicts in favor of Med-Therapy on the federal securities and common law fraud claims (rendering a total award of $552,527 as the jury apparently intended rather than the $300,000 award the judge entered). Diversicare, on the other hand, has appealed the district court's order that effectively rescinded the stock purchase agreement which Med-Therapy had asked the court to enforce. In addition, Diversicare has appealed the district court's order requiring Diversicare to indemnify Med-Therapy for the losses that might arise out of National's medicare liabilities in that such a requirement 1) is premature and 2) contradicts the jury's finding that Diversicare did not breach the Agreement.[5]
 
 Discussion
 
 6
 In an apparent attempt to resolve the situation in an equitable manner, the trial court accepted only part of the jury's verdict and rejected the other part. As illustrated above, such a resolution significantly altered the outcome intended by the jury and, in some cases, contradicted the jury's factual findings. We reverse in part and affirm in part the trial court's order and remand for reinstatement of the jury verdict as rendered.
 
 
 7
 I. Med-Therapy's Motion for a New Trial on Damages
 
 
 8
 The district court did not err in denying Med-Therapy's motion for a new trial on damages. In Walker v. Crigler, 976 F.2d 900, 903 (4th Cir.1992), we held that a trial court's "denial of a motion for a new trial should be reversed only when abuse of discretion on the part of the trial court is shown in its determination that'[t]he jury's verdict was not against the clear weight of the evidence....' "
 
 
 9
 In denying Med-Therapy's motion for a new trial on damages, the judge held that the jury had the prerogative to disregard the "uncontroverted" testimony of Med-Therapy's expert witness. In addition, the judge found that "[t]he jury could certainly have concluded, consistent with the evidence presented at trial, that the stock of [National] was not worthless; and/or that Med-Therapy failed to mitigate whatever damages it may have suffered."[6] The judge continued, "What is obvious to the Court is that Med-Therapy, having opted for a jury trial on a rather complex securities dispute (as it is entitled to do), and having failed to 'ring the bell' with the jury, now wishes to have a second go at it." Because the evidence adduced at trial supports the trial court's conclusions, the trial court did not abuse its discretion in denying the motion for a new trial on the damages issue.
 
 II. The Amount Due Under the Note
 
 10
 The district court erred by cancelling the Note guaranteed by MedTherapy as part of the underlying transaction. That ruling contradicts the jury's finding that Diversicare did not breach the contract, and that Med-Therapy still owed Diversicare the amount due under the Note.
 
 
 11
 Med-Therapy elected to enforce the Agreement by suing for damages for fraud on the basis of that Agreement. A party who brings suit on the basis of an allegedly fraudulent contract must choose to prove fraud and seek recovery under the terms of the contract or to rescind the contract and pursue restitution if applicable. A party may not do both. In Miller v. Premier Corp., 608 F.2d 973, 983 (4th Cir.1979), we delineated a complainant's choice of remedies emphasizing "the principle that a party to a contract who sues to recover damages for fraud in its inducement rather than seeking rescission has thereby affirmed the contract and consequently assumed liability for its breach."[7]
 
 
 12
 Once a contract is affirmed, either party can sue under the agreement to enforce any rights arising under that agreement. One party may be successful on a fraud claim while the opposing party is successful on a breach of contract claim. Miller, 608 F.2d at 983.
 
 
 13
 The principle applies to both common law fraud and federal securities fraud violations. In Randall v. LoftsGaarden, 478 U.S. 647, 662 (1986), the Supreme Court wrote that a Sec. 10(b) plaintiff, in some circumstances, may "choose between 'undoing the bargain (when events since the transaction have not made rescission impossible) or holding the defendant to the bargain by requiring him to pay[out-of-pocket] damages.' "[8]
 
 
 14
 In its Order cancelling the Note, the district court relied on language from Sec. 29(b) of the 1934 Act which suggests that a contract made in violation of that Title is void. Although the judge cited the language of Sec. 29(b) correctly, the courts have interpreted the provision more loosely. Section 29(b) provides: "Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder ... shall be void...." 15 U.S.C.Sec. 78cc(b).
 
 
 15
 In Mills v. Electric Auto-Lite Co., 396 U.S. 375, 387 (1970), the Supreme Court wrote that it did not read Sec. 29(b) of the Act as requiring that a given transaction be set aside simply because the agreement giving rise to that transaction is a "void" contract. The language of Sec. 29(b)
 
 
 16
 establishes that the guilty party is precluded from enforcing the contract against an unwilling, innocent party, but it does not compel the conclusion that the contract is a nullity, creating no enforceable rights even in a party innocent of the violation. The lower federal courts have read Sec. 29(b) ... as rendering the contract merely voidable at the option of the innocent party.... This interpretation is eminently sensible. The interests of the victim are sufficiently protected by giving him the right to rescind....
 
 
 17
 Id. at 387-88 (citations omitted)(emphasis added).
 
 
 18
 The jury specifically affirmed Med-Therapy's obligation to Diversicare under the Note. Although it awarded Med-Therapy damages for fraud, simultaneously it found that Diversicare did not breach the contract and that Med-Therapy owed Diversicare the remaining $552,527. The judge voided the jury's verdict in favor of Diversicare on its claim for the amount due under the Note by entering an order cancelling the Note pursuant to Sec. 29(b). The judge did not have the authority to disregard the jury's factual findings.
 
 
 19
 "When a party has the right to a jury trial on an issue involved in a legal claim, the judge is of course bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim." Lincoln v. Board of Regents, 697 F.2d 928, 934 (11th Cir.), cert. denied, 464 U.S. 826 (1983) (holding that the district court's judgment in that case was not inconsistent with the jury's verdict). Although the judge may have broad legal and equitable powers to order the relief necessary to effectuate the purposes of the securities laws under Mills v. Electric Auto-Lite, those powers are circumscribed when the judge is fashioning that relief subsequent to a jury verdict. The facts on which the judge bases his equitable or declaratory relief must not contravene the facts as found by the jury. In re Lewis, 845 F.2d 624, 629 (6th Cir.1988)("[a]ccording to the progeny of Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959), the legal claim ... must be tried first before a jury and the equitable claim resolved subsequently in light of the jury's determination of the legal claim." Id.)[9].
 
 III. Indemnification
 
 20
 The district court also erred by ordering Diversicare to indemnify Med-Therapy against liability that might arise from potential claims when 1) the jury found that Diversicare did not breach the contract; and 2) no such claims have been asserted.
 
 
 21
 Section 10.2(a) of the Stock Purchase Agreement provided for contractual indemnification in the event of breach by either party. MedTherapy sought indemnification under this provision. The jury found that Diversicare did not breach the agreement. Thus, Med-Therapy was not entitled to contractual indemnification. Rather, the court entered a declaratory judgment awarding Med-Therapy"implied-inlaw" or equitable indemnification. The Declaratory Judgment Act did not give the judge the authority to disregard the jury's factual findings.
 
 
 22
 In addition, the district court judge entered the declaratory judgment for Med-Therapy in anticipation of that company's potential liability. National does not have the assets to satisfy the claims, giving rise to "the possibility that the Government may assert claims against Med-Therapy." As of the date of the Order, the government had not asserted any claims against Med-Therapy. Under the Declaratory Judgment Act, the moving party must demonstrate an actual controversy:
 
 
 23
 [i]n the normal indemnity situation, where, as here, no contractual duty to defend exists, no duty to do anything arises until the alleged indemnitee is adjudged liable. Cunningham Bros., Inc. v. Bail, 407 F.2d 1165 (7th Cir.), cert. denied, 395 U.S. 959 (1969). In addition, the Restatement of Restitution explains that one is entitled to indemnity only if one discharges a debt that he or she owes.
 
 
 24
 A person who, in whole or in part, has discharged a debt which is owed by him but which as between himself and another, should have been discharged by the other, is entitled to indemnification from the other, unless the payor is barred by the wrongful nature of his conduct.
 
 
 25
 Restatement of Restitution Sec. 76. Med-Therapy did not produce any evidence that Medicare has filed or is currently filing claims against Med-Therapy. Thus, aside from the district court's order's inconsistency with the jury verdict, that order was premature.
 
 IV. Aggregation of Damages
 
 26
 The district court awarded Med-Therapy only $300,000, holding "as a matter of law" that the larger award for the federal securities violation subsumed the smaller award for common law fraud. The court held that recovery on both counts would constitute double recovery because both claims arose from the same allegation of wrong-doing and harm. Med-Therapy has appealed this portion of the judge's order.
 
 
 27
 Under Richmond v. Madison Management Group, Inc., 918 F.2d 438, 461 (4th Cir.1990),
 
 
 28
 [a] district court may aggregate verdicts without violating the seventh amendment right to a jury trial if the verdicts are " 'logical and probable' only if they are aggregated." ... The requirement that aggregation occur only if the aggregated verdict is what the jury must have intended stems from the fact that a district court's reexamination of record evidence is barred by the Seventh Amendment.
 
 
 29
 Med-Therapy has argued that the jury clearly intended to award MedTherapy a total of $552,527 for both claims; that, under Richmond, it is logical and probable to aggregate the two awards; and that the trial court erred by refusing to do so.
 
 
 30
 The district judge acknowledged Richmond 's"logical and probable" language in his Order. He held, however, that permitting MedTherapy to recover on both claims would constitute double recovery. The question whether damage awards are duplicative is one of fact. As such, it is reviewable under the clearly erroneous standard. U.S. Indus., Inc. v. Touche Ross & Co., 854 F.2d 1223, 1259 n. 53 (10th Cir.1988).
 
 
 31
 In refusing to aggregate the verdicts, the judge contravened the intent of the jury. The jury clearly intended the parties to come out "in a wash" aside from Med-Therapy's $1000 punitive damages award.[10] In an attempt to award Med-Therapy a total of $553,527 (including punitive damages), the jury apportioned the money among the claims contained in the special verdict forms provided by the judge: $300,000 for the federal securities violation; $252,527 for the common law fraud; and $1000 for punitive damages. Because the awards in favor of each party are identical with the exception of the $1,000 punitive damages award for Med-Therapy, it is an inescapable fact that the jury intended to award Med-Therapy $552,527 for Diversicare's fraud. The verdicts are "logical and probable" under Richmond only if they are aggregated.
 
 
 32
 The jury, then, did not award duplicative damages. Rather, the jury arrived at a lump sum damages decision and appears to have divided it in order to give Med-Therapy something on each claim. The court did not inform the jury prior to its deliberation that such an action would result in the elimination of the lesser award. The court instructed the jury with respect to Med-Therapy's federal securities fraud claim and potential out-of-pocket and consequential damages. The court also instructed the jury as to the six elements of common law fraud under North Carolina law and potential damages. The district court, however, did not instruct the jury as to the "duplication" issue as it affected the federal securities and common law fraud awards.
 
 
 33
 Aside from the fact that the jury intended to give Med-therapy $552,527, it appears that the district judge, in exercising his discretion under Richmond, was unduly influenced by his own decision to cancel the Note, rendered in response to Med-Therapy's post trial motion, effectively eradicating the verdict in favor of Diversicare.[11]
 
 
 34
 Our ultimate purpose in reaching a result in the case, is to adhere fully to the jury's verdict. Because aggregation seems to accomplish the most equitable result, and a result that is consistent with the jury's verdict, we hold that the trial court's order with respect to aggregation should be reversed, and the jury's verdict reinstated as rendered.
 
 V. Constitutional Claims
 
 35
 We have held in Cooke v. Manufactured Homes, Inc., 998 F.2d 1256 (4th Cir.1993), that Sec. 27A of the Securities Exchange Act of 1934 (as amended 15 U.S.C.A. Sec. 78aa-1(a)), is constitutional. As such, Med-Therapy's Sec. 10b claim was timely filed, and Diversicare's argument that we reconsider Cooke is without merit.
 
 VI. Conclusion
 
 36
 The judgment is accordingly affirmed with respect to the district court's denial of a new trial on the damages issue. The parts of the judgment cancelling the Note, requiring indemnification by Diversicare, and refusing aggregation of awards in favor of Med-therapy are reversed, and we remand for reinstatement of the jury verdict as rendered.
 
 
 37
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
 
 
 
 [1]
 Section 3.2 of the Stock Purchase Agreement provided for possible offsets to the $700,000 Note depending on National's future collection of accounts receivable and on the accuracy of a preliminary balance sheet. Although Med-Therapy claimed at trial that a $1,500,000 downward adjustment was warranted, the jury accepted the testimony of Diversicare's Chief Financial Officer that the Note should be adjusted by only $147,473, awarding Diversicare the remaining $552,527. That amount precisely equalled the sum of $300,000 and $252,527 awarded to Med-Therapy by the jury
 
 
 [2]
 Diversicare made a post-trial motion for a judgment on its counterclaim under the Note for both principal ($552,527) and interest, so the total amount sought came to $776,507. The district court denied that motion. Diversicare also requested $322,022.09 in attorney's fees and costs which the court denied
 
 
 [3]
 In an Amended Final Order, the judge stated that the interest due on the $300,000 judgment was $88,000. He entered judgment for MedTherapy in the amount of $388,000 on January 25, 1993. In April of 1993, Judge Williams amended the order once again to reflect the $1,000 punitive damages award which had been left out of the January Order. The final total was $389,000
 
 
 [4]
 The total is obtained by adding the $389,000 to the $108,480 prejudgment interest award
 
 
 [5]
 Because Diversicare did not breach the contract, Med-Therapy was not entitled to indemnification under Section 10.2(a) of the Agreement. Rather, the judge awarded what appears to be "implied-in-law" indemnity as an equitable remedy for losses suffered by Med-Therapy arising out of National's cost reports. The indemnification issue, as illustrated below, is problematic in that Med-Therapy has not been held liable for National's overpayment liabilities
 
 
 [6]
 Evidence adduced at trial suggested that Med-Therapy lacked diligence in pursuing the appeals of the Notices of Program Reimbursement (NPRs) submitted to National by Mutual of Omaha. Issued when adjustments become final, the NPR is the first statement of the amount the provider actually owes on its Medicare settlement. A provider can appeal an NPR to the Provider Reimbursement Review Board within 120 days. The provider can also ask the intermediary to re-open the relevant cost report within three years of the date the intermediary issues the report. Although Med-Therapy filed several appeals consistent with its obligation under the terms of the Agreement, it failed to prosecute those appeals and they were dismissed
 
 
 [7]
 In that case, we found that"it was perfectly possible for Premier to recover on its contract claim despite being liable for damages for fraud in its inducement." Id
 
 
 [8]
 The Supreme Court cited Affiliated Ute Citizens v. United States, 406 U.S. 128, 155 (1972), which involved Sec. 10(b) violations, for the principle that the correct measure of damages under Sec. 28 of the Act, 15 U.S.C. Sec. 78bb(a), is the difference between the fair value of all that the plaintiff received and the fair value of what he would have received had there been no fraudulent conduct. Id. at 661-62
 
 
 [9]
 Lewis continues, " '[i]t is well-settled that the "court may not make findings" contrary to or inconsistent with the jury's resolution ... of that same issue as implicitly reflected in its general verdict.' " Id. at 629. In the instant case, the district court contravened the findings explicitly stated in the jury's special verdict
 
 
 [10]
 The district judge acknowledged that point in his Order
 
 
 [11]
 It is clear from the record that the judge believed a verdict in favor of Med-Therapy on the fraud claims would be inconsistent with an award for Diversicare for the amount due under the Note. As illustrated above, under Miller, the former does not preclude the latter