UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JACQUELINE RAINES DUNLAP,
Administratrix of the estate of
MACEO RAINES MCEACHERN and
VELA RAINES MCEACHERN,
Plaintiff-Appellant,

No. 95-1942

v.

THE GREAT-WEST LIFE ASSURANCE
COMPANY,
Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of North Carolina, at Rockingham.
N. Carlton Tilley, Jr., District Judge.
(CA-93-225)

Argued: February 1, 1996

Decided: April 2, 1996

Before HALL and ERVIN, Circuit Judges, and BLAKE,
United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Richard Gary Buckner, SHARPE & BUCKNER, Rock-
ingham, North Carolina, for Appellant. George Kimmons Evans, Jr.,

CANSLER, LOCKHART, CAMPBELL, EVANS & GARLITZ, P.A., Charlotte, North Carolina, for Appellee. **ON BRIEF:** R. Michael Allen, CANSLER, LOCKHART, CAMPBELL, EVANS & GARLITZ, P.A., Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jacqueline Raines Dunlap, administratrix of the estates of Maceo Raines McEachern and his mother Vela Raines McEachern, appeals from the order of the district court granting summary judgment in favor of the Great-West Life Assurance Company on Dunlap's claim that the Company negligently issued an insurance policy in an excessive amount on the life of Maceo McEachern and thereby caused the murder of both McEacherns. For the reasons that follow, we affirm the decision of the district court.

I.

We review the grant of summary judgment de novo . Cooke v. Manufactured Homes, Inc., 998 F.2d 1256, 1260 (4th Cir. 1993). "Summary judgment is justified if, from the totality of the evidence presented, including pleadings, depositions, answers to interrogatories, and affidavits, the court is satisfied that there is no genuine factual issue for trial and the moving party is entitled to judgment as a matter of law." Sylvia Development Corp. v. Calvert County, 48 F.3d 810, 817 (4th Cir. 1995); see Fed. R. Civ. P. 56(c). While the court must "draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion," Sylvia Development, 48 F.3d at 817 (internal quotations and citations omitted), "the non-moving party must do more than present a `scintilla' of evidence in its favor. . . . [It] must present sufficient evidence . . . that

2

`reasonable jurors could find by a preponderance of the evidence' for the non movant. . . . [I]f the evidence is`merely colorable' or `not significantly probative,' a motion for summary judgment may be granted." Id. at 818 (citations omitted).

II.

This is a diversity case governed by the law of North Carolina. The insurance involved was a "key-man" policy issued on the life of Mr. McEachern pursuant to his purchase of the rights to a sports drink called Pro-Formance from Gymbags, a company owned by Joey Caldwell and his wife Barbara. The purchase was to take place over three years and included royalty payments to Gymbags. The letter purchase agreement between Mr. McEachern and Gymbags contained a clause in which McEachern acknowledged that Gymbags intended to obtain an insurance policy on McEachern's life for the benefit of Gymbags in an amount of "not less than $1,000,000." J.A. at 81.[1]

Randy Riggins, an insurance agent formerly married to Barbara Caldwell, in fact obtained two policies on McEachern's life, one in the amount of $1,500,000 from Sun Life Assurance Company[2] and one in the amount of $500,000 from Great-Western. A short time later the McEacherns were murdered.[3] Great-West paid the proceeds of the policy to Gymbags. Eventually, however, Joey and Barbara Caldwell were prosecuted and convicted for the two murders. This lawsuit followed.

In granting Great-West's motion for summary judgment, the district court examined the law of North Carolina and persuasive authority from other States and concluded:

_____

[1] Perhaps due to typographical error, the district court opinion cites this at one point as an amount "not to exceed $1,000,000." J.A. at 63.

[2] Sun Life was sued separately and apparently settled its case. Brief of Appellee at 2.

[3] It appears that Mrs. McEachern was killed only because she happened to be with her son when he was shot.

3

From these cases, it appears that a claim of negligent policy issuance will arise where 1) the beneficiary has no insurable interest in the life of the insured, . . . 2) the insurance company had actual knowledge of a plan to murder the insured for the proceeds, or 3) the insured did not consent to the policy and the insurance company had actual knowledge that the signature of the insured had been forged. Plaintiff has not asserted that Great-West had actual knowledge of the Caldwell's [sic] plans to murder Mr. McEachern. Similarly, Plaintiff acknowledges that none of Mr. McEachern's signatures to the applications, medical authorization forms, or the February 1 letter agreement authorizing Gymbags' obtaining life insurance on his life, were forged. The only theory remaining to Plaintiff is that Gymbags did not have an insurable interest in the life of Mr. McEachern.

J.A. at 60. Like the district court, we do not reach the question whether, in some circumstances, the amount of a requested life insurance policy could so greatly exceed any reasonable insurable interest as to put the company on notice that "a murderous plot was afoot." J.A. at 63. In light of the contract for the purchase of the rights to Pro-Formance, however, it cannot seriously be disputed that Gymbags had a substantial insurable interest in the life of Mr. McEachern. Having carefully reviewed the record and considered counsels' briefs and oral arguments, we affirm on the reasoning set forth in the opinion of the district court.

AFFIRMED

4